Thomas E. Goldman, J.
The defendant is charged with speeding, and the sole evidence produced by the People concerning his speed was that derived from the use of a new device known as Vascar (visual average speed computer recorder). This instrument is supposed to measure the distance a vehicle travels and the time which it takes the vehicle to cover that distance. By using the mathematical formula of speed equals distance divided by time, the unit computes the average speed of a vehicle over the distance measured and visually displays that speed to the operator.
Vascar’s accuracy and reliability has not yet been challenged and this is the first test case in the State of New York dealing with this device. Since the instrument is new, expert testimony as to the scientific principle, construction, operation, accuracy and reliability of the device must be proven beyond a reasonable doubt (City of Buffalo v. Beck, 205 Misc. 757; City of Rochester v. Torpey, 204 Misc. 1023; People v. Martirano, 52 Misc 2d 64).
The proof submitted by the People consisted of testimony of duly qualified experts who were in charge of the development, manufacture and marketing of this device. This proof established the following facts. The Vascar unit is composed of four modules: an odometer module which measures distance, a switch module which is used by the operator to activate the time and distance-measuring devices, a display module on which the resulting speed is displayed, and lastly, a computer module which records the distance, measures time and divides the time into the distance.
The odometer module is connected to the speedometer cable of the vehicle in which the unit is installed. When the distance switch is activated the revolutions of the cable are transformed into impulses which are counted by the computer. In this man *804 ner the computer measures the distance traveled by the vehicle in which it is installed. The accuracy of the speedometer is immaterial. The important factor here is that the cable will be consistent in the number of revolutions per mile.
Time is measured by use of an oscillator which produces impulses at the rate of 170.7 each second. When the time switch is activated, the computer counts the number of impulses and in this way it measures time. There is a voltage regulator in the computer which insures the accuracy of the oscillator.
There was ample proof concerning the various tests made of the equipment and it is the court’s finding that the machine “ is an accurate and proper instrument for detecting speed violations on our highways ”, if properly tested and used. (People v. Sachs, 1 Misc 2d 148, 154.)
There was considerable proof concerning the extensive training and testing of Vascab operators. The People satisfactorily proved that individuals could and were trained in such a manner that if the device were used as directed it would accurately measure the speed of a vehicle. (People v. Sachs, supra.) The court recognizes that because of the human factor it is impossible to measure exact speed. However, proof was presented that demonstrated that after proper training of Vascab operators, human error would result in a measurement error of less than one mile per hour.
The key to the accuracy of Vascab is proof that the device was operated in such a way that it would in fact measure the distance a suspected violator travels and the time during which he traveled that distance. (People v. Sachs, supra.) This requires proof that the device was tested to determine if it was working properly (People v. Rothstein, 1 Misc 2d 516; People v. Martirano, supra) and that it was, in fact, properly used. (People v. Sachs, supra.)
Thus, the real issue here presented is whether, after testing the machine by using an accurately measured course and an accurate stopwatch on the day in question, Trooper Gorenflo operated the machine in such a way so as to accurately measure the defendant’s speed.
The arresting trooper, William Gorenflo, had successfully completed the requisite training and his test results showed a maximum error of four tenths of a mile per hour and his average error was seventeen hundredths of a mile per hour. His testimony concerning the testing of the machine was, in the court’s judgment, sufficient and convincing. Shortly before the arrest of the defendant he properly tested the machine by use of a one-half mile course which was shown to have been meas *805 ured by a certified measuring tape and by use of a stopwatch whose accuracy had been tested by WWV, the radio station whose accuracy is universally recognized. Contrary to the defendant’s arguments, it is not necessary in testing a Vascas device to prove the speedometer on the troop car is properly calibrated since, as above stated, its accuracy is not material in operation of this device.
Trooper Gorenflo’s testimony concerning his clocking of the defendant was clear and exact. As the defendant’s car passed into the shadow of the Washington Road overpass, the trooper activated the time switch, and, as the troop car passed into this shadow the distance switch was activated. The time switch was turned off as the defendant’s car passed into the shadow of the Golf Avenue bridge some four to five tenths of a mile later, and the distance switch was turned off as the troop car entered into this same shadow. Despite intensive cross-examination the trooper proved beyond a reasonable doubt that he did not miss any one of the reference points. In response to being asked how close the trooper felt he came to his reference points, he replied: “A. To my knowledge, I hit them exactly. I have no doubt. I had no doubt in my mind that I missed them. My own feelings and observations at this time, I hit these points exactly, to my knowledge.”
After this clocking was completed, 74.5 was displayed on the display module. Thus, the court finds that the average speed of the defendant’s vehicle between these two points has been proven to have been 74.5 miles per hour. Even allowing for the human error factor, the defendant’s speed was in excess of the posted limit for this highway of 60 miles per hour. The court finds the defendant guilty.