Mitchell D. Schweitzer, J.
This is an application by relator for a writ of habeas corpus. Relator was indicted on April 2, 1969, with others, on charges of conspiracy in the first degree, attempted murder, conspiracy in the second degree, attempt to commit arson in the first degree, arson in the first degree, arson in the second degree, reckless endangerment in the first degree, and possessing a weapon, dangerous instrument and appliance as a felony. He is presently in custody in lieu of bail, awaiting trial.
Relator, in his petition, generally alleges denial of routine privileges and particularly alleges that he was assaulted by a prison guard on July 23, 1969. At issue is the scope of the writ of habeas corpus. Ancillary to this issue is whether the claim of relator on this application is of such a character as to require a hearing to test its merits.
Historically considered the writ of habeas corpus existed principally for the purpose of inquiring into alleged jurisdictional defects to alleviate the oppression of unlawful imprisonment and abuses of a similar character (see People ex rel. Brown v. Johnston, 9 N Y 2d 482; People ex rel. Keitt v. McMann, 18 N Y 2d 257). A broadening of this remedy within some jurisdiction, most noticeably the Federal, permits inquiry into alleged violations of basic freedoms (see Coffin v. Reichard, 143 F. 2d 443). In Coffin v. Reichard (supra) the petition for a writ of habeas corpus particularized facts showing that the prisoner, sentenced after a guilty plea, suffered assaults and cruelties from guards and co-inmates. Holding that a habeas corpus proceeding was proper, the Circuit Court of Appeals (6th Cir.) stated: “ Any unlawful restraint of personal liberty may be inquired into on habeas corpus * * * although a person is in lawful custody.” Further: “ [t]he Government has the absolute right to hold prisoners for offenses against it. but it also has the correlative duty to protect them against assault or *115 injury from any quarter while so held.” (Coffin v. Reichard, supra, p. 445.)
The subtle expansion of the availability of the writ of habeas corpus in New York is evident upon studied scrutiny of recent cases. In People ex rel. Brown v. Johnston (9 N Y 2d 482, supra) the Court of Appeals examined the question of the availability of habeas corpus to test the validity of the transfer of a prisoner, sentenced on a guilty plea, from one- penal institution to a State hospital for the insane. The following pertinent observations were made by the court in determining that the writ was properly utilized: ‘£ Since the writ of habeas corpus has traditionally been relied upon to alleviate the oppression of unlawful imprisonment and abuses of a similar character, * * * " [w] e cannot merely by virtue of the valid judgment sanction the subsequent abrogation of lawful process. The State’s right to detain a prisoner is entitled to no greater application than its correlative duty to protect him from unlawful and onerous treatment (Ann. 155 A. L. R. 145, 146), mental or physical. £ [R] elief other than that of absolute discharge ’ should be forthcoming [citation]. To implement this duty and secure the relief due the prisoner, we can and should recognize that £ [c] ourts have always asserted and exercised authority which, though perhaps not expressly established by statute, is based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogative and "to prevent oppression or persecution’” [citations].” (People ex rel. Brown v. Johnston, supra, p. 485.)
Subsequently, the Court of Appeals held that habeas corpus was available to test a claim that the introduction of certain evidence violated both due process and the privilege against self incrimination (People ex rel. Keitt v. McMann, 18 N Y 2d 257, supra). In noting the “ subtle albeit steady change ” of the narrow rule restricting the availability of habeas corpus enunciated in Matter of Hogan v. New York Supreme Ct. (295 N. Y. 92, 97), the court declared that: 1 ‘ habeas corpus is an appropriate proceeding to test a claim that the relator has been imprisoned after being deprived of a fundamental constitutional or statutory right in a criminal prosecution, including, but not limited to, the right to be tried and sentenced by a court having jurisdiction over the charge and the person.” (People ex rel. Keitt v. McMann, supra, p. 262.)
The following caveat was added: ££ We have intimated that to adhere to the rigidities of traditional practice and procedure would be contrary to the spirit and purposes of the writ *116 [citation]. While cases may arise where the right 'to invoke habeas corpus may take precedence over ‘ procedural orderliness and conformity ’ [citation], we are not holding that habeas corpus is either the only or the preferred means of vindicating fundamental constitutional or statutory rights (e.g., People v. Huntley, 15 N Y 2d 72, 76-77). Departure from traditional orderly proceedings, such as appeal, should be permitted only when dictated, as here, by reason of practicality and necessity ” (People ex rel. Keitt v. McMann, supra, p. 262 [Emphasis supplied]).
The rationale of the afore-mentioned pronouncements of the Court of Appeals again found application in People ex rel. Rohrlich v. Follette (20 N Y 2d 297), which held that where relator alleges that his right to a fair trial was prejudiced by pretrial publicity, habeas corpus is a proper remedy and he should be given a hearing to establish his allegations that he could not and did not receive a fair trial.
Also, the issues of whether a prisoner sentenced to one day to life had in fact been receiving adequate psychological and psy^ ehiatric treatment during his imprisonment has been held a proper subject for habeas corpus relief (People ex rel. Smith v. La Vallee, 29 A D 2d 248 [4th Dept., 1968]).
The application herein is novel in that relator is in custody in lieu of bail pending trial, is not a convicted person, and seeks a writ of habeas corpus to compel his release. Even assuming relator’s allegations to be true, his detention would not thereby be rendered illegal so as to require his discharge. However, the court, in a habeas corpus proceeding properly entertained, is not limited to á simple discharge (see People ex rel. Brown v. Johnston, 9 N Y 2d 482, supra; Ann. 155 A. L. R. 145, 146).
It is the opinion of this court, in view of the aforesaid, that an individual under indictment and incarcerated in liéu of bail pending trial is entitled to apply for habeas corpus if his petition is supported by a prima facie showing of a course of cruel and unusual treatment occurring at a t-ime and place and under circumstances giving rise to the inference that the treatment will continue or be repeated in the absence of judicial intervention. Such a course of treatment occurring under such circumstances requires utilization of habeas corpus as the necessary and practical remedy. .
The prima facie showing of a course of cruel and unusual treatment should minimally require a verified statement detailing: (a) the facts respecting the course of treatment claimed to be cruel and unusual; (b) the time and pilace. of such treatment; and (c) the identity of the person or persons considered *117 responsible for it (see, e.g., State ex rel. Cole v. Tahash, 269 Minn. 1). Upon such a showing that the treatment to which relator has been subjected is in fact cruel and unusual and occurred at a time and place and under circumstances giving rise to the inference that the infringement of constitutional rights will be continued unless relief is afforded, the court can and should grant a habeas corpus hearing on the petition in order to make a determination of the facts as justified by the evidence.
However, the petition of relator herein is patently insufficient to establish a prima facie showing of cruel and unusual treatment in accordance with the above-delineated requirement. The petition for a writ of habeas corpus is denied, without prejudice to the rights of the petitioner to apply for habeas corpus upon adequate grounds if such grounds do in fact exist.
The court reiterates that in its opinion habeas corpus is available as the necessary and practical remedy for an individual under indictment and incarcerated in lieu of bail pending trial who is subjected to a course of cruel and unusual treatment occurring at a time and place and under circumstances giving rise to the inference that the treatment will continue or be repeated. Habeas corpus is not the only or the preferred means of vindicating fundamental constitutional or statutory rights. Other remedies may be utilized in respect of cruel and unusual treatment not subject to a habeas corpus proceeding.