Kenneth C. Johnson, Jr., J.
This is an appeal of a speeding conviction in the (Court of Special Sessions of the Village of Cayuga 'Heights whereby defendant was found guilty of violating section 1180 (subd. [d]) of the Vehicle and Traffic Law iif that she was operating her automobile at a rate of 50 miles per hour in a 30 miles per hour zone.
Defendant’s affidavit of appeal contends various errors entitling her to a reversal which are all mainly concerned with the one principal point that it was not established that the radar unit was operating accurately since no vehicle test runs were made after the radar equipment was set up.
The return shows that the defendant was operating her automobile in a southerly direction on Triphammer Eoad in the Village of Cayuga Heights in a 30 miles per hour zone between the Triphammer Shopping (Center and the Corners Community Center and that an officer attached to the police division of the said village was parked on the west side of the road in a police vehicle which contained radar equipment. The officer testified that his patrol car was facing south and he first observed the defendant’s vehicle in his rearview mirror. Upon the radar meter’s needle holding at '50 miles per hour and the buzzer sounding he gave immediate pursuit right after the defendant’s vehicle passed the patrol car and apprehended her within a distance of approximately one city block.
The proof showed that the radar equipment used consisted of a main box or meter located on the front seat and an antenna clamped outside on the left rear window of the police vehicle. The officer testified as to his training in the operation of the radar unit and estimated he had operated it between 130 and 140 hours. He testified that after warming the radar úp he tested it in three ways, The first test was by means of an internal switch, the second by means of a 50 miles per hour tuning fork, and the third by means of a 30 miles-per hour tuning *119 fork. The testimony shows that there were no other tests made, no test vehicle was used to pass through the radar’s field of influence (set at 45 miles per hour or faster for more than three seconds), and there was no opinion testimony or other independent testimony of the speed of the defendant.
Convictions for speeding have many times been upheld based upon evidence of tested radar equipment. (People v. Magri, 3 N Y 2d 562; People v. Dusing, 5 N Y 2d 126.) However, all the cases that have come to the attention of this court have required that some independent test as to the accuracy of the radar equipment must be proven, such as driving a police test car through the radar zone, or if only a tuning fork test was made, that there must be at minimum independent opinion testimony of the speed of the defendant or some other independent testimony corroborating the speed as determined by the radar. The accuracy of the radar unit in order for such radar unit to be considered tested and 1‘ for it to alone support a conviction for speeding beyond a reasonable doubt, must be established by clear, convincing and unequivocal proof and beyond a reasonable doubt. ’ ’ (People v. Martirano, 52 Misc 2d 64, 65.)
In the Martirano case (supra) the court held that the accuracy of the radar unit from which the only evidence of speeding was obtained was not sufficiently established. However, in that case the bnly evidence as to the accuracy of the radar unit was the one tuning fork test registering at a speed of 40 miles per hour. In the case at hand three tests as to the accuracy of the radar unit were performed. There are two tuning forks used in the operation of the equipment and also an internal test calibration in the machine itself. The first test testified to by the officer was the internal calibration by an electronic tone within the machine itself which was calibrated at 60 miles per hour and which the officer checked simply by turning on what he referred to as “ an internal switch” and checking the reading. There also was a tuning fork calibrated at 50 miles per hour which was tested. There was another tuning fork calibrated at 30 miles per hour which was also tested. The record shows that the officer made all three tests after the radar equipment had warmed up for 15 minutes. On redirect, examination the officer confirmed the fact that he tested the machine before and after each setup that day and there had been no irregularities.
Judge Lyman H. Smith in the case of People v. Stephens (52 Misc 2d 1070), involving tests as to the accuracy of a radar unit by means of checking a tuning fork calibrated at 50 miles per hour and also by driving a police test car through the radar zone of influence (the test car’s speedometer calibration record hav *120 ing not been admitted into evidence), at page 1072 states succinctly and comprehensively the problems involved in proving the accuracy of radar devices: “While our higher courts have not spelled out the exact limits to which the accused speeder may go upon trial to plumb the accuracy of the testing devices, this court is not prepared to cast the burden on the People of offering proof of the accuracy of both the calibrated tuning fork and the speedometer of the test car beyond the simple comparative analyses made ill the instant case. Beyond such simple tests must lie tests of the devices used to test other measuring devices. Beyond these tests must lie metal fatigue tests, conductivity tests, and electrical time-lag tests involving the variant components used in all of the testing devices, and so on and on. These tests must end somewhere. The oft-heard layman’s opinion that the enforcement of the law can be frustrated by a ‘ legal bag of tricks ’ must not be encouraged by slavish adherence to hypertechnical requirements of myriad testings of the components of every device used to measure accuracy of every other measuring device. ”
It is inconceivable that the internal check made of the radar unit within the machine itself calibrated at 60 miles per hour, the check as to accuracy made by testing the tuning fork calibrated at 60 miles per hour, and the check made by testing the tuning fork calibrated at 30 miles per hour, could all be inaccurate to the same degree.
This court, therefore, holds that the accuracy of the radar unit was established by clear, convincing and unequivocal proof and beyond a reasonable doubt by said three separate tests. Judgment of conviction is hereby affirmed.